IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

R.S.,[1]

    Plaintiff,

vs.                                                               Case No. 19-2424-SAC

ANDREW SAUL,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

**MEMORANDUM AND ORDER**

On May 11, 2017, plaintiff filed an application for social security disability insurance benefits and for supplemental security income benefits. The applications alleged a disability onset date of January 31, 2016. The applications were denied initially and on reconsideration. An administrative hearing was conducted on November 1, 2018. The administrative law judge (ALJ) considered the evidence and decided on February 13, 2019 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's applications for benefits.

---

[1] The initials are used to protect privacy interests.

1

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This standard is "not high," but it is "more than a scintilla." Id.

(quoting Consolidated Edison, 305 U.S. at 229). It does not require a preponderance of the evidence. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. THE ALJ'S DECISION (Tr. 13-28).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 14-15). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional

capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy for persons with the claimant's residual functional capacity. Id. In this case, the ALJ decided that there were jobs in the economy that plaintiff could perform with his residual functional capacity.

The ALJ made the following specific findings in his decision. First, plaintiff met the insured status requirements for benefits through June 30, 2020. Second, plaintiff has not engaged in substantial gainful activity since January 31, 2016. Third, plaintiff has the following severe impairments: asthma with chronic obstructive pulmonary disease (COPD); diabetes mellitus type 2 with neuropathy; remote history of cervical and lumbar degenerative disc disease status-post surgeries; obesity; depression and bipolar disorder; anxiety; borderline personality disorder; and polysubstance abuse. Fourth, plaintiff does not

4

have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity:

> to lift and carry up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. [Plaintiff] can occasionally climb ladders, ropes and scaffolds, stoop, kneel, crouch and crawl; and can frequently climb ramps and stairs and balance. Plaintiff can occasionally use foot controls bilaterally. [Plaintiff] can occasionally work at unprotected heights, with moving mechanical parts, and in vibration. [Plaintiff] should never be exposed to humidity/wetness, dust, odors, fumes and pulmonary irritants, extreme cold and extreme heat. [Plaintiff] is able to understand, remember, and carry out simple, routine and repetitive tasks in a work environment with no fast-paced production requirements involving only simple work-related decisions, and with only occasional judgment and work place changes. [Plaintiff] can frequently respond to and have interaction with supervisors and coworkers, and occasionally with the general public.

(r. 19-20). Sixth, the ALJ concluded that plaintiff could not perform his past relevant work. Finally, the ALJ determined that, considering plaintiff's age, education, work experience and residual functional capacity (RFC), there are jobs that exist in significant numbers in the national economy he can perform, such as copy machine operator, router and collator operator. The ALJ relied in part upon vocational expert testimony for the last two findings.

III. THE DENIAL OF BENEFITS SHALL BE AFFIRMED.

Plaintiff argues that the ALJ's formulation of his physical RFC is not supported by substantial evidence for three reasons. Plaintiff does not contest the ALJ's findings regarding any mental or emotional impairments.

A. The ALJ properly considered the medical record and the opinions of non-examining physicians in formulating the RFC.

Initially, plaintiff argues somewhat generally that the RFC is not substantially supported by medical evidence relevant to all of plaintiff's severe impairments. The court rejects this argument as discussed below.

The ALJ's opinion reviewed the evidence as follows. The ALJ referred to plaintiff's history of breathing problems "in terms of asthma with COPD". He noted that plaintiff had sometimes complained of shortness of breath, cough with chest pain, intermittent sharp chest pain, dyspnea and fatigue, but that on other occasions he denied cough, dyspnea and chest pain or discomfort. (Tr. 21). The ALJ referred to chest x-rays, breathing measures and oxygen saturation levels and determined that these reports did not demonstrate a disabling functional limitation. (Tr. 21). He further noted that physical examinations frequently indicated clear lungs with normal air movement and no significant wheeze or rhonchi. (Tr. 21). This included the consultative examination. (Tr. 21). The ALJ did not consider the episodes of

6

breathing issues sufficient to substantiate the claims plaintiff made as to his symptoms. He determined that such examples were "acute or transient in nature and do not outweigh the preponderance of the physical examination findings that indicate preserved functional capacity." (Tr. 21).

The ALJ acknowledged plaintiff's history of diabetes with neuropathy. (Tr. 21). He discussed the objective data and concluded that the results did not show disabling functional limitations. (Tr. 22). He noted that clinical findings typically showed that plaintiff's sensation is intact and concluded that the pattern of clinical findings was not consistent with plaintiff's alleged limitations. (Tr. 22). The ALJ also concluded that the preponderance of the examination findings indicates a preserved functional capacity. (Tr. 22).

The ALJ discussed plaintiff's contention that he suffers chronic neck and back pain despite cervical and lumbar surgeries 10 and 20 years ago. He concluded that plaintiff has not exhibited a persistent "pattern of chronic motor, sensory, strength, or reflex deficits reasonably consistent with his allegations." (Tr. 22). The ALJ noted that physical examinations indicated: a full range of motion without pain; normal gait and stance; and undiminished cervical spine rotation. (Tr. 22). He acknowledged that plaintiff had a positive straight leg raise, was unable to squat down, required assistance getting up and down from an

7

examining table, had moderate difficulty walking on his toes and heels, and could not tandem walk. He concluded that while plaintiff may have some pain and limitations because of his past surgeries and degenerative disc disease, the clinical findings did not support the extent of his alleged limitations. (Tr. 22).

The ALJ afforded "significant persuasiveness" to the opinions of Dr. Garland Tschudin and Dr. Tracey Larrison, neither of whom examined plaintiff. (Tr. 24-25). Drs. Tschudin and Larrison rendered opinions as to plaintiff's residual functional capacity and his exertional, postural and other limitations. (Tr. 120-22, 159-61). The opinions were briefly explained and supported with references to medical records and the report of the consultative examiner.

The ALJ found that the doctors' opinions were "consistent with [plaintiff's] testimony that he can lift 25 pounds, stand 20 [minutes] at one time, walk 20 [minutes], sit 25 [minutes], drive and sweep/vacuum." (Tr. 25). He found that their reports, which found no manipulative limitations, were also consistent with plaintiff's testimony that neuropathy did not affect his ability to write or grip. (Tr. 25).

The ALJ also considered the report of Dr. Lindsey Schwartz, who performed a consultative examination but did not render an opinion regarding plaintiff's functional capacity.

8

Plaintiff argues that the opinions of non-examining or non-treating physicians are not substantial evidence supporting the ALJ's RFC determination. The court rejects this argument. Non-examining sources may provide relevant opinion evidence. 20 C.F.R. § 404.1527(e); Jones v. Berryhill, 720 Fed.Appx. 457, 460 (10th Cir. 2017)(affirming decision which gave significant weight to state agency nonexamining consultant and little weight to four other consulting physicians three of whom examined the claimant); Tarpley v. Colvin, 601 Fed.Appx. 641, 644 (10th Cir. 2015)(affirming decision which gave significant weight to the opinion of a nontreating agency physician). And, a consultative examination report may be considered even if it lacks an opinion regarding plaintiff's ability to do work-related functions. Branum v. Barnhart, 385 F.3d 1268, 1273 (10th Cir. 2004). Here, the ALJ has supplemented that evidence with references to other parts of the medical record. And, no contrary opinion is cited by plaintiff. The court finds the evidence is adequate for a reasonable mind to accept the RFC and, therefore, must be considered "substantial evidence."[2]

Plaintiff also argues that the opinions relied upon by the ALJ are stale. Plaintiff, however, does not adequately support

---

[2] Plaintiff cites Jenkins v. Apfel, 196 F.3d 992, 995 (8th Cir. 1999) and Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004) to support his position. These cases are distinguishable because treating doctors' opinions and other medical opinions were cited which were contrary to the non-examining physicians' opinions relied upon by the ALJs.

9

this argument. He cites to Chapo v. Astrue, 682 F.3d 1285 (10th Cir. 2012) which is distinguishable on its facts. In Chapo, the ALJ relied upon opinions rendered before new x-rays, straight-leg test results, and an MRI shed a different light upon the claimant's physical status. Plaintiff cites no such evidence post-dating the opinions relied upon by the ALJ in this case. In his reply brief, plaintiff refers to evidence indicating that plaintiff's blood sugars were not controlled in April, June and July 2018, after the doctor's reports relied upon by the ALJ were written. But, the doctors' opinions did not address plaintiff's blood sugars. They did address sensation and manipulative limitations. There is no substantial grounds to find that the blood sugar results would change the doctors' findings or opinion. Also, the ALJ did not find that plaintiff's blood sugars were controlled. He found that the evidence did not show functional limitations. (Tr. 21). The evidence noted in the reply brief also does not show functional limitations.

Plaintiff further contends that the non-examining physicians' opinions should be discounted because they did not consider plaintiff's asthma, COPD, diabetes with neuropathy, and obesity. The court rejects this argument for the following reasons. First, plaintiff testified that he was prevented from working because of: back pain, neck pain, COPD, diabetes, plantar fibromatosis, anxiety and depression. (Tr. 48-50). Plaintiff did not mention

asthma or obesity. Nor did his attorney. (Tr. 40). Second, the consultative examining physician (Dr. Schwartz) discussed plaintiff's "breathing problems" and COPD. He also gave plaintiff a sensory examination, tested plaintiff for range of motion, and reviewed various musculoskeletal movements. (Tr. 632-37). These are tests which should provide information material to the impact of diabetic neuropathy and obesity upon plaintiff's functional capacity. Dr. Larrison, in turn, considered Dr. Schwartz's report and both Dr. Larrison and Dr. Tschudin considered other medical records in this matter. These circumstances are substantially different from those in the case cited by plaintiff, Kemp v. Bowen, 816 F.2d 1469, 1475-76 (10th Cir. 1987), where he ALJ "totally ignored evidence" from a treating physician and other sources.

Plaintiff further asserts that the ALJ neglected his duty to develop the record. He claims the ALJ should have obtained a medical opinion as to the impact of all of plaintiff's severe impairments upon his functional capacity. The cases cited by plaintiff,[3] however, are distinguishable because the ALJ's RFC in this case is supported by more evidence and contradicted by less than in the cases plaintiff cites. Here, the ALJ supported his

---

[3] These cases are in order of citation: Baker v. Barnhart, 84 Fed.Appx. 10, 14 (10th Cir. 2003); Oslin v. Barnhart, 69 Fed.Appx. 942, 948-49 (10th Cir. 2003); Fleetwood v. Barnhart, 211 Fed.Appx. 736 (10th Cir. 2007); Whittle v. Colvin, 2015 WL 630923 *6 (N.D.Okla. 2/12/2015); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). Plaintiff also cites Sims v. Apfel, 530 U.S. 103, 111 (2000), but only for the general proposition that the ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits."

conclusions with a thorough discussion of the record, consideration of a consultative examination report, and citation to multiple non-examining physicians' reports (not check-a-box forms) which render opinions as to plaintiff's functional limitations.

B. <u>The ALJ properly considered obesity.</u>

Plaintiff contends that the ALJ's RFC is flawed because of a failure to consider plaintiff's obesity and to comply with the social security regulations relating to obesity. At the administrative hearing, neither plaintiff nor his attorney specifically mentioned obesity as a limiting condition. Nevertheless, the ALJ's decision addressed that subject as follows:

> The medical record also suggests that the claimant is obese. At the hearing, the claimant testified he weighed 240 pounds and was 6'1" tall. This would give him a Body Mass Index (BMI) in excess of 29. BMI is a measure of an individual's obesity. Indexes over 29 are considered to be in the obese range. An individual may have limitations in any of the exertional functions, postural functions, in their ability to manipulate objects, or to tolerate extreme heat, humidity, or hazards because of obesity. "[T]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." (SSR 02-01p) <u>The effects of the claimant's obesity have been considered when determining a residual functional capacity for the claimant</u>. Because there is no listing for obesity, Social Security Ruling 02-1p explains an individual with obesity will "meet" the requirements of a listing if there is another impairment that, in combination with obesity, meets the requirements of a listing. We may also find that obesity, by itself, is medically equivalent to a listed

12

>    impairment if it equals in severity a listed impairment. In this case, after evaluating any additional and cumulative effects of claimant's obesity, the evidence does not support finding the claimant's condition meets or equals the criteria of a listing. . . .
>
>    As discussed above, the claimant does have a history of obesity with BMIs consistently over 30. . . However, there is no objective data or clinical findings that necessitate disabling limitations due to obesity or the combined effects of obesity and any other impairment.

(Tr. 17-18 and 22)(emphasis added).

It is obvious from the ALJ's decision that obesity was considered as a factor in determining plaintiff's RFC. It is also apparent that obesity's effects upon plaintiff's functioning were subsumed in the discussions and examinations made in reports considered by the ALJ. Under these circumstances, the court finds no error or regulatory violation in the consideration of obesity.[4] See Razo v. Colvin, 663 Fed.Appx. 710, 716-17 (10th Cir. 2016)(effects of obesity subsumed in discussion of other medical conditions); Smith v. Colvin, 625 Fed.Appx. 896, 899 (10th Cir. 2015)(ALJ not required to explicitly discuss the absence of evidence that obesity contributed to additional functional limitations or exacerbated any impairment); Rose v. Colvin, 634 Fed.Appx. 632, 637 (10th Cir. 2015)(ALJ's obligation to consider and discuss obesity limited when evidence does not indicate

---

[4] Plaintiff's citation to DeWitt v. Astrue, 381 Fed.Appx. 782 (10th Cir. 2010) is distinguishable. In DeWitt, the claimant urged obesity as an impairment and a non-examining doctor relied upon by the ALJ never considered obesity and dismissed the opinion of the claimant's treating doctor without articulating the basis for his disagreement.

functional limitations from obesity and ALJ included restrictions for stooping, kneeling and crouching); <u>Howard v. Barnhart</u>, 379 F.3d 945, 948 (10th Cir. 2004) (ramifications of obesity discussed in connection with musculoskeletal impairments); <u>R.S. v. Commissioner of Social Security Administration</u>, 2019 WL 1762733 *2-3 (D.Kan. 4/22/2019)(no regulatory violation where ALJ stated that obesity was a severe impairment, said he considered it in determining RFC, and plaintiff did not claim obesity as a disabling factor).

    C. <u>The ALJ properly considered Dr. Schwartz's findings.</u>

Finally, plaintiff contends that the ALJ did not adequately account for the limitations substantiated by Dr. Schwartz's consultative examination. Plaintiff argues that Dr. Schwartz documented moderate difficulty in manipulating objects, reduced shoulder range of motion, moderate difficulty lifting and carrying personal items; and shortness of breath just on examination. Plaintiff asserts that the ALJ's RFC is deficient because it does not account for limitations in these areas.

The ALJ, not a physician, is responsible for determining plaintiff's RFC from the record. <u>Howard</u>, 379 F.3d at 949. The ALJ's RFC assessment is an administrative, not a medical determination. <u>McDonald v. Astrue</u>, 492 Fed.Appx. 875, 885 (10th Cir. 2012). It is based on all of the evidence, not just the medical evidence, so it is "well within the province of the ALJ."

14

Dixon v. Apfel, 1999 WL 651389 *2 (10th Cir. 8/26/1999). There is no "requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity question" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Chapo, 682 F.3d at 1288). The court believes the RFC in this case is supported by substantial evidence.

This is not a situation where an ALJ gave significant or controlling weight to a medical opinion only to disregard those parts of the opinion which contradicted the ALJ's findings. The ALJ did not state what weight he gave the Dr. Schwartz's findings. Furthermore, those parts of Dr. Schwartz's report which plaintiff highlights in his argument are somewhat ambiguous,[5] do not state an opinion regarding plaintiff's functional limitations, and must be weighed against evidence which is contrary to plaintiff's position. The ALJ discussed contrary evidence in his opinion which the court has summarized on pages 6-8 of this order. In addition, Drs. Tschudin and Larrison reached conclusions similar to the ALJ.

In summary, the court finds no serious challenge to the RFC determination from Dr. Schwartz's report and concludes that the ALJ's assessment is supported by substantial evidence.

---

[5] Dr. Schwartz observed plaintiff "to be able to button and unbutton a shirt, pick up and grasp a pen and write a sentence and lift, carry and handle personal belongings moderate difficulty (sic). . . . [Plaintiff] could dress and undress adequately well."  (Tr. 637)

IV. CONCLUSION

For the above-stated reasons, the court affirms defendant's decision to deny plaintiff's applications for social security benefits and shall dismiss this action to reverse the decision.

**IT IS SO ORDERED.**

Dated this 21st day of February, 2020, at Topeka, Kansas.

<u>s/Sam A. Crow</u>
Sam A. Crow, U.S. District Senior Judge